## AETNA LIFE INSURANCE CO. et al. v. SHORT et al.

No. 26474. Jan. 26, 1937.

Rehearing Denied June 8, 1937.

B. B. Blakeney, Jr., and Blakeney & Ambrister, for plaintiffs in error.

George M. Nicholson, for defendants in error W. W. Short, Fannie W. Short, and John A. Haste, guardian ad litem.

Jarman & Brown, for defendants in error Charles W. Gunter and Louise C. Gunter.

CORN, J. This action was instituted in the district court of Murray county by the Aetna Life Insurance Company, a corporation, against W. W. Short et al., to foreclose a mortgage covering certain real estate in said county.

The trial court rendered judgment establishing the amount of the debt and its lien security against the land, but reserved for future determination the issue of who, if anyone, was personally liable for the debt, which issue needed to be determined only if the property failed to sell for an amount sufficient to satisfy the judgment. The property failed to sell for enough, and the trial court at the time of confirming sale held that no one was personally liable. The Aetna Life Insurance Company and the Home Development Company appealed.

A summary of the facts follows: W. W. Short and wife executed and delivered to the Aetna Life Insurance Company a note and mortgage upon certain real estate. The Shorts thereafter conveyed the real estate to Gunter; the deed containing an express assumption of the debt by Gunter. The Aetna Life Insurance Company learned of this, and thereafter looked to Gunter for the interest payments, which he duly paid. About two and one-half years thereafter, Gunter reconveyed the real estate subject to the mortgage back to Short, who made some interest payments. The insurance company instituted this action in April, 1932, and obtained judgment for the amount due as a lien against the land in May, 1934. Short and Gunter were denying personal liability to the Aetna and contesting primary liability as between themselves. The court reserved this issue until after the sale, apparently with the notion that if the proceeds of the sale satisfied the judgment debt, the issue would become moot. December 5, 1934, the Aetna assigned the judgment to the Home Development Company, a corporation. December 10, 1934, the sheriff sold the real estate to the Home Development Company and a deficiency remained. Objection was made by Gunter to the confirmation of the sale, but the court confirmed the sale and rendered the following supplemental judgment and decree, which in part is:

"* * * The court * * * finds: That all the facts set forth in the amended answer of said defendant Charles W. Gunter, and the amendments thereto are true and correct and finds all the issues in favor of said defendant Charles Gunter, and that he is not personally liable to the plaintiff, nor to its said assignee, Home Development Company, for any part of the indebtedness involved herein; nor to the said William W. Short

and Fannie W. Short, or either of them. * * *"

The appeal as to Gunter is predicated on the above supplemental judgment and decree quoted from. Neither William W. Short nor Fannie W. Short appealed from the supplemental judgment and decree; therefore, the judgment and decree has become final as to all parties except the Home Development Company, which is the assignee of the Aetna Life Insurance Company. Plaintiff in error will be hereafter referred to as plaintiff, and defendant in error as defendant, as they appeared in the lower court.

The theory of the plaintiff is that it makes no difference what Gunter and Short did after Gunter accepted a deed from Short in which he assumed the mortgage indebtedness; that Gunter would be liable to plaintiff by reason of that fact alone.

Plaintiff's attorneys predicate their whole case against Gunter on the fact that the deed from the Shorts to Gunter provided that he, Gunter, assumed and agreed to pay the debt, coupled with the further fact that he made two interest payments on the mortgage indebtedness, immediately after he acquired the land, and while he held title thereto.

The authorities are divided as to the theory of liability of a grantee of a mortgagor to the mortgagee when such grantee assumes and agrees to pay the mortgage debt. In some jurisdictions, the courts hold that such an agreement on the part of the grantee of the mortgagor is a contract made for the benefit of the mortgagee. Oklahoma and many other jurisdictions decline to follow this rule. They hold that the right of the mortgagee to collect from the grantee of the mortgagor, when such grantee assumes and agrees to pay the mortgage debt, "comes from a rule in equity that the mortgagee is entitled to the benefit of all the collateral securities which his debtor has taken for the mortgage debt." Beardsley v. Stephens, 134 Okla. 243, 246, 273 P. 240, 242.

Cushing v. Newbern, 75 Okla. 258, 183 P. 409, is cited by counsel for plaintiff, and they say that the second paragraph of the syllabus expressly fixes the liability of the grantee of mortgaged property. We do not believe that there can be any controversy in Oklahoma as to the rights of a mortgagee to institute and maintain a suit against the grantee of the mortgagor where such grantee assumes and agrees to pay the mortgage debt and the mortgagor does not thereafter reacquire the land under agreement to pay the mortgage debt. That is a settled question in Oklahoma. But that is not the question which is involved herein. The question involved in the case at bar is: Can the mortgagee maintain a suit against the grantee of the mortgagor when such grantee, who assumed and agreed to pay the debt, had, before the mortgagee instituted a suit to foreclose the mortgage, reconveyed the property back to the original mortgagor, who reassumed the payment of the mortgage debt, as alleged in Gunter's amended answer and found to be true by the trial court?

As soon as the cause of action in favor of the mortgagor as against his grantee who assumed and agreed to pay said mortgage is destroyed, the cause of action in favor of the mortgagee as against the grantee is destroyed, unless said grantee has caused said mortgagee to alter its position by changing the terms of the mortgage.

Counsel, in plaintiff's brief, use the following language:

"As stated in the note at 21 A. L. R. page 422, in either event the right of the mortgagee becomes fixed when he deals with the principal debtor by granting him an extension of time for payment or accepts payment from him, and that in such case the right is not defeated by the subsequent reconveyance to and reassumption of the mortgage by the original mortgagor."

The real import of the note referred to in the above quotation is very much distorted in plaintiff's brief. The note does not even purport to be a treatise on the question under consideration. The author, as will be observed by referring to the note, merely intended to set forth the fact that the law as announced in the case of Thacker v. Hubard & Appleby, Inc. (Va.) 21 A. L. R. 414, and the case of Hubard & Appleby, Inc., v. Thacker (Va.) 21 A. L. R. 423, did not conflict. In the first case the Supreme Court of Appeal of Virginia held that when a grantee purchases land from a mortgagor and assumes and agrees to pay the debt, such an agreement is not a contract made for the benefit of a third party, but that the mortgagee is permitted to sue such grantee on the equitable doctrine that the mortgagee has the right to avail himself of any collateral that the mortgagor has as security for the debt. The Supreme Court of Appeal of Virginia, on the point in said case, as set forth in 21 A. L. R. 420, quoting from Crowell v. Hospital of Saint Barnabas, 27 N. J. Eq. 655, says:

"He is allowed by a rule of procedure to go directly as a creditor against the person ultimately liable, in order to avoid a circuity of action, and save the mortgagor, as the intermediate party, from being harassed for the payment of the debt, and then driven to seek relief over against the person who has indemnified him, and upon him the liability will ultimately fall. The equity on which this relief depends is the right of the mortgagor against his vendee, to which he is permitted to succeed by substituting himself in the place of the mortgagor."

It will thus be seen that the Supreme Court of Appeal of Virginia permitted the mortgagee to sue the vendee of the mortgagor because such vendee, who had assumed and agreed to pay the debt, would be ultimately liable for the debt. That reason for suing the vendee is wholly lacking in the instant case. Short reacquired the land and reassumed the payment of the debt, and by this transaction, under the facts in this case, he absolutely relieved Gunter from all obligation to pay the debt. And in the other case decided by the Supreme Court of Appeal of Virginia and referred to in the note above mentioned, the vendee, after he acquired the land and had assumed and agreed to pay the debt, procured an extension of time from the mortgagee in which to pay the debt and thereafter made a number of payments thereon. Then, after all this had been done, he reconveyed the property back to the mortgagor, who reassumed the payment of the debt. The Supreme Court of Appeal of the state of Virginia held that, after the vendee had caused the mortgagee to alter his position by changing the terms of the payment of the mortgage, etc., such vendee could not escape liability to the mortgagee by reconveying the land to the mortgagor.

The holding of the court in the last-mentioned case did not even intimate that a vendee, by making mere interest payments, without anything more, could not thereafter escape obligation to pay the mortgage debt by a reconveyance to the mortgagor, who reassumed the payment of such debt.

In Drollinger v. Carson (Kan.) 155 P. 923, the 4th paragraph of the syllabus is as follows:

"The fact that by the terms of such a contract the purchaser assumes the payment of an existing mortgage interposes no obstacle to a rescission by the vendor, where the mortgagee has done no act in recognition of the purchaser's obligation beyond accepting interest paid by him at a bank."

On the 4th day of January, 1935, the trial court conducted its hearing for the purpose of determining whether or not the defendants should be held personally liable and determined by general judgment to that effect that they should not. The precise basis of the trial court's ruling exonerating the defendants William W. Short and Fannie W. Short was not made to appear upon the face of the journal entry of supplemental judgment, but thereafter proof was made as to the basis of the decision upon this point and it was shown by testimony introduced and the statement of the trial judge dictated into and made a part of the record that at the time the supplemental judgment was rendered counsel for the respective parties had formally admitted in open court the existence of an agreement made subsequent to the first judgment but prior to the sale of the property, the essence of the agreement being that, if William W. Short would not bid upon or attempt to buy the mortgaged land when it was offered for sale and would not object to the confirmation of the sale thereof, a deficiency judgment would not be taken against him. It is further shown that in reliance upon said agreement the defendant William W. Short did not bid upon the land at the time it was sold upon special execution in the foreclosure proceedings and did not object to the confirmation of the sale thereof. Upon consideration of the existence of this agreement, the trial court determined that a deficiency judgment should not be entered against William W. Short and Fannie W. Short and by its judgment exonerated them from liability.

The law favors the compromise and settlement of disputed claims and will sustain said settlement if fairly made, because it is to the interest of the state that there be an end to litigation. Therefore, a court of equity, in the absence of fraud or mistake, will not aid a party to an action to violate a settlement of the litigation out of court, voluntarily entered into with the other party. 12 C. J. 336; Sango v. Parks, 44 Okla. 223, 143 P. 1158; Tracy v. Norvell, 81 Okla. 94, 196 P. 929; Keifer Oil & Gas Co. v. McDougal (C. C. A.) 229 Fed. 933; Freeman v. Sullivan, 6 Okla. 220, 221 P. 460; Roxana Petroleum Co. v. Goldrick, 113 Okla. 298, 242 P. 228; Tulsa Interstate Petroleum Co. v. Allison, 112 Okla. 47, 239 P. 633.

A part of the supplemental judgment and decree affecting the defendants William W. Short and Fannie W. Short is as follows:

"The court further finds all the issues involving the personal liability of the defendants William W. Short and Fannie W. Short in favor of said defendants, and that neither the plaintiff nor its said assignee, Home Development Company, is entitled to personal judgment against the defendants William W. Short and Fannie W. Short, or either of them."

The trial judge made a general finding, as set forth in the supplemental judgment and decree, in favor of the defendants Charles W. Gunter, William W. Short, and Fannie W. Short.

After a thorough examination of the entire record we are unable to say that such finding is against the clear weight of the evidence. The judgment of the trial court is therefore affirmed.

OSBORN, C. J., and WELCH, PHELPS, and HURST, JJ., concur.